UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **HECTOR LOPEZ**, Individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**LPE INC., GERARDO MONTALVO, and MARIO DOMINGUEZ JR.**<br><br>*Defendants*. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**CLASS ACTION PURSUANT TO FED. R. CIV. P. 23** |

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff Hector Lopez brings this action individually and on behalf of all others similarly situated (hereinafter "Plaintiff and the Putative Class Members") who worked for LPE Inc., Gerardo Montalvo, and Mario Dominguez, Jr. (collectively "Defendants") at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, liquidated damages, attorneys' fees, and costs, pursuant to the provisions of Section 216(b) of the Fair Labor Standards Act ("FLSA"), and the New Mexico Minimum Wage Act (hereinafter "NMMWA"), §§ 50-4-19 *et seq*.

Plaintiff's FLSA claim is asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while his New Mexico state-law claims are asserted as a class action under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 23.

# I.
# OVERVIEW

1. This lawsuit includes a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA, 29 U.S.C. §§ 201–19, and a Federal Rule of Civil Procedure 23(b)(3) class action pursuant to New Mexico state law.

2. Plaintiff and the Putative Class Members are those similarly situated persons who worked for Defendants at any time from April 18, 2016 through the final disposition of this matter and were not paid any overtime.

3. Defendants improperly classified Plaintiff and the Putative Class Members as independent contractors.

4. Although Plaintiff and the Putative Class Members routinely worked (and work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

5. The decision by Defendants not to pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

6. Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

7. Plaintiff and the Putative Class Members therefore seek to recover all unpaid wages and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid overtime and other damages owed under the NMMWA as a class action pursuant to FED. R. CIV. P. 23.

8. Plaintiff prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

9. Plaintiff also prays that the Rule 23/New Mexico Class is certified as defined herein, and Plaintiff Lopez be designated as the Class Representative.

## II.
## THE PARTIES

10. Plaintiff Hector Lopez ("Lopez") worked for Defendants during the relevant time-period. Plaintiff Lopez did not receive overtime for all hours worked in excess of forty (40) hours per workweek.[1]

11. The FLSA Collective Members are those similarly situated employees who worked for LPE at any time from April 18, 2016 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Lopez worked and was paid.

12. The New Mexico Class Members are those similarly situated employees who worked for LPE in the State of New Mexico at any time from April 18, 2016 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Lopez worked and was paid.

13. Defendant LPE Inc. ("LPE Inc.") is a Texas for-profit company, licensed to and doing business in Texas, and may be served through its registered agent for service of process: **Gerardo Montalvo, 1811 Stonefield, Laredo, Texas 78045**.

14. Defendant Gerardo Montalvo ("Montalvo") is an Owner and Director of LPE Inc., and an employer as defined by 29 U.S.C. § 203(d). Defendant Montalvo may be served at **1811 Stonefield, Laredo, Texas 78045, or wherever he may be found**.

---

[1] The written consent of Hector Lopez is hereby attached as Exhibit "A."

15. Defendant Mario Dominguez Jr. ("Dominguez") is an Owner and Director of LPE Inc., and an employer as defined by 29 U.S.C. § 203(d). Defendant Dominguez may be served at **7502 Rob Brogan Ct, Laredo, Texas 78041, or wherever he may be found**.

16. Defendants are joint employers pursuant to 29 C.F.R. § 791.2. They have maintained common ownership, oversight and control over LPE Inc. and Plaintiff and the Putative Class Members during the relevant time period. As a result, Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the employment for the workweeks at issue in this case during the relevant time period.

## III.
## JURISDICTION & VENUE

17. This Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. § 201 *et. seq.*

18. This Court has supplemental jurisdiction over the additional New Mexico state law claims under 29 U.S.C. § 1367.

19. This Court has personal jurisdiction over Defendants because the cause of action arose within this District as a result of Defendants' conduct within this District.

20. Venue is proper in the Southern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

21. Specifically, Defendants have maintained a working presence throughout the State of Texas and Plaintiff Lopez performed work for LPE in South Texas, all of which are located within this District and Division.

22. Venue is therefore proper in this District pursuant to 28 U.S.C. § 1391.

# IV.
# ADDITIONAL FACTS

23. LPE, Inc. is an oilfield service company servicing the oil and gas industry in the State of Texas.

24. Defendants are joint employers pursuant to 29 C.F.R. § 791.2.

25. Defendants directly or indirectly hired Plaintiff and the Putative Class Members, controlled their work schedules and conditions of employment, and determined the rate and method of the payment of wages, and (mis)classified them as independent contractors.

26. Defendants maintained control, oversight, and direction over Plaintiff and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages for overtime compensation.

27. Defendants mutually benefitted from the work performed by Plaintiff and the Putative Class Members.

28. Defendants did not act entirely independently of each other and have not been completely disassociated with respect to the work of Plaintiff and other similarly situated employees.

29. Defendants shared the services of Plaintiff and other similarly situated employees.

30. Defendants acted directly or indirectly in the interest of each other in relation to Plaintiff and the Putative Class Members.

31. Specifically, Defendants dictate the practice goals and what pressing or tactical items need to be done in order to meet the goals of LPE Inc. and/or their clients.

32. Specifically, Defendant Montalvo and Defendant Dominguez, on behalf of LPE, Inc., directed Plaintiff and the Putative Class Members which tasks to complete on a near daily basis.

33. Further, Defendants manage key internal relationships to LPE Inc.—that is, Defendants direct the financials of LPE Inc. and control the day rates and non-discretionary job

bonuses/day rates of Plaintiff and the Putative Class Members who directly or indirectly report to Defendants.

34. Moreover, Defendants have the power to hire and fire Plaintiff and the Putative Class Members; supervise and control Plaintiff and the Putative Class Members' work schedules and conditions of their employment; determine their rate and method of payment; and, maintain their employment records.

35. Specifically, Defendant Montalvo and Defendant Dominguez set Plaintiff and the Putative Class Members weekly schedules and set their pay rates.

36. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

37. To provide their services, LPE, Inc. employed (and continues to employ) numerous oilfield workers—including Plaintiff Lopez and the individuals that make up the putative classes.

38. While exact job titles may differ, these oilfield workers were subjected to the same or similar illegal pay practices for similar work in the oilfield.

39. Plaintiff and the Putative Class Members provided oilfield services for LPE Inc.'s benefit and were all paid a day rate but no overtime.

40. Specifically, Plaintiff Lopez was employed by Defendants as a Water Transfer Operator from approximately January 2016 until October 2018 and was paid a day rate of $120.00 plus a $60.00 per day bonus if he worked over sixteen (16) hours in a day.

41. Plaintiff Lopez did not receive overtime compensation at the required rate of time-and-one-half for all hours worked over forty (40) each week.

42. Although it is well-known that blue-collar oilfield workers like Plaintiff and the Putative Class Members are not exempt from overtime, Defendants misclassified Plaintiff and the

Putative Class Members as independent contractors and did not pay them the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

43. Plaintiff and the Putative Class Members' primary job duties related to providing oilfield services for Defendants, services which were (and continue to be) assigned by Defendants.

44. Plaintiff and the Putative Class Members would conduct their day-to-day activities within designed parameters and in accordance with pre-determined operational plans coordinated by Defendants and/or their clients.

45. Plaintiff and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans and procedures set by Defendants.

46. Virtually every job function was pre-determined by Defendants, including how to perform the tasks set by Defendants, the schedule of work, and related work duties.

47. In fact, Plaintiff and the Putative Class Members were prohibited from varying their job duties outside of these predetermined parameters.

48. Moreover, Plaintiff and the Putative Class Members' job functions were primarily routine and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

49. Indeed, Plaintiff and the Putative Class Members rely on their hands, physical skills, and energy to perform manual and routine labor in the oilfield.

50. Plaintiff and the Putative Class Members' duties did not (and currently do not) include the exercise of independent discretion or judgment.

51. Defendants determined the hours Plaintiff and the Putative Class Members worked.

52. Defendants set Plaintiff and the Putative Class Members' pay and controlled the number of hours they worked.

53. Defendants set all employment-related policies applicable to Plaintiff and the Putative Class Members.

54. Defendants maintained control over pricing and marketing. Defendants also chose equipment and product suppliers.

55. Defendants owned or controlled the materials and supplies Plaintiff and the Putative Class Members used to perform their work.

56. Defendants had the power to hire and fire Plaintiff and the Putative Class Members.

57. Defendants made all personnel and payroll decisions with respect to Plaintiff and the Putative Class Members, including but not limited to, the decision to pay Plaintiff and the Putative Class Members a day rate plus bonuses with no overtime pay.

58. Defendants reimbursed Plaintiff and the Putative Class Members for expenses and bought or provided the materials Plaintiff and the Potential Class Members used.

59. Plaintiff and the Putative Class Members did not employ their own workers and/or helpers.

60. Plaintiff and the Putative Class Members worked for LPE on a permanent full-time basis.

61. Defendants, instead of Plaintiff and the Putative Class Members, made the large capital investments in vehicles, buildings, equipment, and supplies. Moreover, Defendants paid operating expenses like rent, payroll, marketing, insurance, and bills.

62. Plaintiff and the Putative Class Members relied on Defendants for their work.

63. Defendants did not permit Plaintiff and the Putative Class Members to market any business or services of their own.

64. Plaintiff and the Putative Class Members worked the hours assigned by Defendants, performed duties assigned by Defendants, worked on projects assigned by Defendants, and worked

for the benefit of Defendants and its customers.

65. Plaintiff and the Putative Class Members did not earn a profit based on any business investment of their own.

66. Defendants improperly classified Plaintiff and the Putative Class Members as independent contractors. The classification was improper because Plaintiff and the Putative Class Members were not in business for themselves. Instead, they were economically dependent upon Defendants for their work.

67. Plaintiff and the Putative Class Members worked long hours. Specifically, Defendants regularly scheduled Plaintiff and the Putative Class Members for a minimum of twelve (12) hours per day and they regularly worked a minimum of 84 hours per week.

68. The non-discretionary day bonuses paid to Plaintiff and the Putative Class Members were meant to encourage and motivate Plaintiff and the Putative Class Members to work harder and to reward them for their hard work.

69. The non-discretionary day bonuses were based upon a pre-determined formula established by Defendants. Moreover, specific criteria had to be met in order to receive the job day bonus.

70. When Plaintiff and the Putative Class Members met the criteria, they were entitled to receive the day bonus.

71. The FLSA and NMMWA requires that overtime be paid at one and one-half times an employee's regular rate of pay.

72. Under the FLSA, the regular rate of pay is the economic reality of the arrangement between the employer and the employee. 29 C.F.R. § 778.108.

73. Pursuant to 29 C.F.R. § 778.209, these non-discretionary day bonuses (and any other non-discretionary compensation) should have been included in Plaintiff and the Putative Class

Members' regular rates of pay before any and all overtime multipliers were applied.

74. Defendants denied Plaintiff and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice.

75. Plaintiff and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

76. Accordingly, Defendants' pay policies and practices blatantly violated (and continue to violate) the FLSA and NMMWA.

# V.
# CAUSE OF ACTION

## COUNT ONE
### (Collective Action Alleging FLSA Violations)

**A.      FLSA COVERAGE**

77. All previous paragraphs are incorporated as though fully set forth herein.

78. The FLSA Collective is defined as:

**ALL OILFIELD WORKERS WHO WERE EMPLOYED BY LPE INC., GERARDO MONTALVO AND/OR MARIO DOMINGUEZ JR., AT ANY TIME FROM APRIL 18, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective" or "FLSA Collective Members").**

79. At all material times, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

80. At all material times, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

81. At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of section 203(s)(l) of the FLSA because Defendants have had and continues to have employees engaged in interstate commerce. 29 U.S.C. § 203(s)(1).

82. Specifically, Defendant purchased materials through commerce, including uniforms for Plaintiff and the Putative Class Members, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, United States mail, and electronic mail.

83. At all material times, Plaintiff and the FLSA Collective Members are (or were) employees who engaged in commerce or in the production of goods for commerce as required by sections 206 and 207 of the FLSA. 29 U.S.C. §§ 206–07.

84. At all material times, Defendants have had (and continue to have) an annual gross business volume in excess of the statutory minimum of $500,000.00. 29 U.S.C. § 203(s)(1).

**B.    FAILURE TO PAY WAGES AND OVERTIME PURSUANT TO THE FLSA**

85. Defendants violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207 and 215(2)(a), by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment for all hours in excess of forty (40) per week at rates at least one and one-half times the regular rates for which they were employed.

86. Defendants are sophisticated parties and employers, and therefore knew (or should have known) their policies were in violation of the FLSA.

87. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay according to the law.

88. The decision and practice by Defendants to not pay any overtime was neither reasonable nor in good faith.

89. Plaintiff and the FLSA Collective Members are entitled to overtime wages for all hours worked over forty each week pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages in an amount equal to their overtime wages, in addition to attorneys' fees and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

90. Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all those who are (or were) similarly situated to Plaintiff Lopez.

91. Other similarly situated employees have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

92. The FLSA Collective Members are defined in Paragraph 78.

93. Defendants' systematic failure to timely pay overtime compensation at the rates required by the FLSA results from generally applicable policies and practices, and does not depend on the personal circumstances of Plaintiff Lopez.

94. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

95. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

96. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be timely and properly compensated for all hours worked in excess of forty (40) hours per workweek.

97. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the FLSA Collective Members are non-exempt workers entitled to be paid the proper amount of overtime compensation for all hours worked over forty (40) each week.

98. Defendants have employed (and continue to employ) numerous oilfield workers during the past three years.

99. Absent a collective action, many members of the proposed FLSA class will not likely obtain redress of their injuries and Defendants will retain the proceeds of their rampant violations.

100. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

101. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined in Paragraph 78 and notice should be promptly sent.

## COUNT TWO
**(Class Action Alleging Violations of the New Mexico Minimum Wage Act)**

**A. NMMWA COVERAGE**

102. All previous paragraphs are incorporated as though fully set forth herein.

103. The New Mexico Class is defined as:

**ALL OILFIELD WORKERS WHO WERE EMPLOYED BY LPE INC., GERARDO MONTALVO, AND/OR MARIO DOMINGUEZ JR., IN THE STATE OF NEW MEXICO, AT ANY TIME FROM APRIL 18, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("New Mexico Class" or "New Mexico Class Members").**

104. The conduct alleged in this Complaint violates the New Mexico Minimum Wage Act ("NMMWA"), N.M.S.A. 1978, § 50-4-19 *et seq*.

105. Defendants are employers within the meaning of the NMMWA. N.M.S.A. 1978 § 50-4-20.

106. At all relevant times, Defendants employed Plaintiff and each of the New Mexico Class Members, as "employees" within the meaning of the NMMWA. *Id.*

**B. FAILURE TO PAY IN ACCORDANCE WITH THE NMMWA**

107. The NMMWA requires employers, like Defendants, to pay overtime to all non-exempt employees. N.M.S.A. 1978, § 50-4-22.

108. Plaintiff and the other New Mexico Class Members are **_non-exempt_** employees who are entitled to be paid overtime at the proper rate for all overtime hours worked.

109. Defendants have had a policy and practice of failing to pay overtime to the New Mexico Class Members for their hours worked in excess of forty (40) hours each week.

110. Defendants have maintained a continuing pay practice of not paying overtime for all hours worked in excess of forty (40) in each workweek to Plaintiff and other hourly employees who performed work on behalf of Defendants and/or their clients in New Mexico.

111. As a result of Defendants' failure to pay overtime to Plaintiff and the New Mexico Class Members at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants violated the NMMWA.

112. Defendants' failure to pay the proper amount of overtime compensation to Plaintiff and the New Mexico Class is part of a continuing course of conduct.

**C. NEW MEXICO CLASS ALLEGATIONS**

113. All previous paragraphs are incorporated as though fully set forth herein.

114. Plaintiff and the members of the New Mexico Class who performed work on behalf of LPE and/or their clients in New Mexico are entitled to invoke the benefits of N.M.S.A. 1978, § 50-4-32 (1978).

115. As a result, this action "may encompass all violations that occurred as part of [Defendant's] continuing course of conduct regardless of the date on which they occurred.

116. Plaintiff and the members of the New Mexico Class bring their New Mexico state law claims on behalf of all current and former hourly employees who worked for Defendants and/or their clients in New Mexico pursuant to FED. R. CIV. P. 23 (the "New Mexico Class").

117. On information and belief, Defendants have employed dozens of employees paid a day rate but no overtime during the past three years in New Mexico.

118. These workers are geographically dispersed, residing throughout the United States.

119. Plaintiff will fairly and adequately protect the interests of the New Mexico Class.

120. Plaintiff retained counsel who are experienced and competent in class action and employment litigation.

121. Plaintiff has no relevant interest contrary to, or in conflict with, the members of the classes.

122. Just like each member of the proposed classes, Plaintiff has an interest in obtaining the overtime wages owed to her under state and/or federal law.

123. A collective/class action suit, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

124. Absent this action, many members of the class likely will not obtain redress of their injuries and Defendants will retain the proceeds of its violations of the NMMWA.

125. Furthermore, even if particular members of the classes could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

126. Consolidating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

127. There is a well-defined community of interest in the questions of law and fact affecting the New Mexico Class as a whole.

128. The questions of law and fact common to the New Mexico Class predominate over any questions affecting solely the individual members.

129. Among the common questions of law and fact are:

   a. Whether Defendants employed members of the New Mexico class within the meaning of the applicable statutes, including the NMMWA;

   b. Whether Defendants failed to pay Plaintiff and the New Mexico Class overtime pay;

   c. Whether Defendants' failure to pay overtime was in good faith;

d. Whether Defendants' violations of the NMMWA were (and continue to be) willful;

e. Whether Defendants kept adequate records of the hours worked by its day-rate employees.

130. Plaintiff's claims are typical of the claims of members of the New Mexico Class.

131. Plaintiff and the New Mexico Class have all sustained damages arising out of Defendants' wrongful and uniform employment policy to not pay overtime compensation.

132. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

133. Accordingly, the New Mexico Class should be certified as defined in Paragraph 103.

## VI.
## RELIEF SOUGHT

134. Plaintiff respectfully prays for judgment against Defendants as follows:

a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 78 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b. For an Order certifying the New Mexico Class as defined in Paragraph 103 and designating Hector Lopez as the Class Representative of the New Mexico Class;

c. For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

d. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the

suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

e. For an Order pursuant to the NMMWA awarding Plaintiff Lopez and the New Mexico Class Members all damages allowed by law;

f. For an Order awarding the costs and expenses of this action;

g. For an Order awarding attorneys' fees;

h. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

i. For an Order awarding Plaintiff Lopez a service award as permitted by law;

j. For an Order compelling the accounting of the books and records of Defendants, at Defendants' own expense; and

k. For an Order granting such other and further relief as may be necessary and appropriate.

Date: April 18, 2019    Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:   /s/ *Clif Alexander*
**Clif Alexander**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy**
Federal I.D. No. 1122168
Texas Bar No. 24071993
lauren@a2xlaw.com
**Alan Clifton Gordon**
Federal I.D. No. 19259
Texas Bar No. 00793838
cgordon@a2xlaw.com
**Carter T. Hastings**
Federal I.D. No. 3101064
Texas Bar No. 24101879
carter@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiff and the Putative Class Members***